### JOHN COOK *v.* COMMONWEALTH.

[Kentucky Law Reporter, Vol. 4—31.]

**Instruction in Homicide Case.**

An instruction in a homicide case that in order to constitute legal provocation so as to reduce a homicide from murder to manslaughter it is necessary that the accused should be in danger of great bodily harm and that it must be shown that a blow or actual trespass to the person has been inflicted is erroneous.

**Legal Provocation.**

Legal provocation, such as will reduce murder to manslaughter may consist of an assault or battery of such force, or inflicted under such circumstances as was calculated to produce sudden heat and passion, or a sudden anger.

**Credibility of Witnesses.**

The jury are the judges of the credibility of the witnesses and it is error for the court in his instruction to indicate any particular test of credibility to the jury or to instruct or indicate that if a witness has wilfully and corruptly sworn falsely as to any material fact they may disregard the whole of his evidence. A particular conclusion, based upon a single supposed fact, should not be pointed out to the jury as one that they may come to.

APPEAL FROM HARDIN CIRCUIT COURT.

June 22, 1882.

OPINION BY JUDGE HARGIS:

The appellant, Cook, was tried upon an indictment for the murder of Warren Miller, and convicted and sentenced to the penitentiary for life, from which he prosecutes this appeal.

The evidence tends to prove that appellant and Smith were playing ten-pins, on New Year's day, against the deceased and Williams, and when the game was concluded the appellant claimed that Williams owed him fifty cents he had won on the game. Williams denied it and they denounced each other as liars, and Williams asked Smith for a pistol to "shoot the d——d s——n of a b——h," and appellant said "give him one if that is his game," and drew his pistol. At this moment deceased interfered, saying he was appellant's friend, but the appellant said he was not his friend, and if he advanced on him he would shoot his d——d head off. He rubbed the pistol in the face of the deceased, who continued to advance on him, until they got back near the stove and the wall, when appellant shot him and was knocked down by Smith, Williams being too drunk, as he swears, to know what was going on, except he remembers what was said between him and the appellant and the pistol shot. Appellant escaped hatless from the house. There is evidence conducing to prove that the deceased, Smith, and Williams were friends, and the first two were brothers-in-law. Smith was the keeper of the ten-pin alley, which was connected with a bar-room.

The court properly instructed the jury as to the law of the case in all of the instructions, except the seventh and eighth. By the seventh instruction the jury were told, in a confused and almost unintelligible manner, that the heat and passion necessary to reduce a crime from murder to manslaughter must be produced by a blow or an actual trespass to the person, or such conduct on the part of the deceased as indicated to the defendant a present intention to attack defendant and do him some great bodily harm. In order to constitute legal provocation that will reduce a homicide from murder to manslaughter it is not necessary that the defendant should be in danger of great bodily harm, for this constitutes self-defense. Nor must it be shown that a blow or actual trespass to the person has been inflicted. The definition of legal provocation given by the court, coupled with the confusion in the first part of the instruction, was calculated to mislead the jury and

cause them to believe that a blow, or danger of great bodily harm to the appellant, was necessary to be proved before they should find him guilty of manslaughter. See *Donnellan v. Commonwealth,* 7 Bush (Ky.) 676.

In the case of *Williams v. Commonwealth,* 80 Kentucky 313, it was held that legal provocation consisted of an assault or battery of such force, or inflicted under such circumstances as was calculated to produce sudden heat and passion, or a sudden anger. This we believe to be the correct law, which will insure justice, if it be intelligently applied by the juries of the country to the facts of the particular cases. Unreasonable tempers, and habitually bad and uncontrollable passions, should not be shielded by trivial or trifling provocations, but the jury should be judges of such matters, guided by and within the requisites of the law.

Again and again this court has indicated to the inferior courts that it is improper to instruct the jury that if a witness has wilfully and corruptly swore falsely as to any material fact they may disregard the whole of his evidence. The jury are judges of the weight and credibility of the evidence, and the court should not indicate any particular test of credibility to the jury. They should apply all legal, logical, and common-sense tests to both the sufficiency and credibility of the evidence of which they must necessarily judge, but a particular conclusion, based upon a single supposed fact, ought not to be isolated and pointed out to the jury as one that they may come to. While we would not have reversed this case on account of the giving of this instruction, still such an instruction ought never to be given in any kind of a case, and were it shown to be prejudicial to a party we would feel it our duty to remedy the error.

Wherefore the judgment is *reversed* and cause remanded with directions to grant the appellant a new trial.

*H. T. Wilson, W. S. Chelf, for appellant.*

*P. W. Hardin, for appellee.*

[Cited, *Barnett v. Commonwealth,* 84 Ky. 449, 8 Ky. L. 448, 1 S. W. 722.]